UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

IN RE:
OCEAN DEVELOPMENT 1, L.L.C.,
Debtor.
_____/

Case Number 09 – 38535 – BKC – EPK
Chapter 11
Palm Beach Division

CREWMEMBERS' EMERGENCY MOTIONS TO
1) COMPEL DEBTOR/EMPLOYER TO OBTAIN VISA EXTENSION FOR VESSEL AND CREW;
2) DETERMINE CONDITIONS FOR REMOVING ESTATE ASSETS FROM JURISDICTION;
3) PAY PRE-PETITION and POST-PETITION WAGES; and
4) ACCESS TO CREW FOR LEGAL ASSISTANCE

(EMERGENCY HEARING REQUESTED)

COMES NOW Seaman LAURENCE TAULON, on behalf of himself and all others similarly situated, to wit the various crewmembers of the M/V "PALM BEACH PRINCESS", and petitions this Honorable Court with these Emergency Motions to: 1) Compel Debtor/Employer to Obtain Visa Extension for Vessel and Crew; 2) Determine Conditions for Removal of Estate Assets from Jurisdiction; 3) Pay Pre-Petition and Post-Petition Wages, and 4) Access to Crew for Legal Assistance as follows:

### MOTION TO COMPEL DEBTOR/EMPLOYER TO OBTAIN VISA EXTENSION FOR VESSEL AND CREW

1. Upon bankruptcy, First Ocean Development 1, LLC ("Debtor") owed the Crew over $180,000 in wages. Post bankruptcy, no wage payments have been made. Those Crew demanding payment of past due wages were not offered continued employment, but were instead terminated by Debtor without cause and repatriated, with eight discharged this weekend.

2. Almost the entire 190 plus Crew complement is foreign, with approximately 140 being Filipino.

3. To comply with U.S. immigration regulations, the vessel and Crew must leave the U.S. every

29 days to "go foreign." This, perforce, requires the ship to leave U.S. waters and the jurisdiction of its courts.

4. Approximately one year ago, a vessel similar to the *M/V "PALM BEACH PRINCESS*, the *M/V "CASINO ROYALE"* left U.S. waters with its crew aboard to "go foreign" in the Bahamas. The vessel was arrested in the Bahamas and the crew stranded. To this day, there are crewmembers of that ship who have never been paid.

5. The technical supervising captain for the *M/V "CASINO ROYALE,"* Captain Emilio Tsoskopolous, is now the same captain for the *M/V "PALM BEACH PRINCESS."*

6. Debtor has represented to the Crew that the *M/V "PALM BEACH PRINCESS"* will go to the Bahamas and return forthwith with the entire Crew aboard. The Crew alleges this is false, and further alleges as follows:

   a) that agents of the Debtor, specifically the General Manager Gary Kurran, amongst others, went to the Dominican Republic within the last month to arrange for the *M/V "PALM BEACH PRINCESS"* to be taken to that country, not the Bahamas, and

   b) further allege that the vessel's bridge currently contains course plottings for the Dominican Republic, not the Bahamas.

   While counsel has no written declaration to substantiate said allegations, these are presented by counsel in good faith upon information and belief gleaned from various sources.

7. In the face of the expiring visas for the vessel and crew, and despite clear representations by U.S. Customs and Border Protection ("CBP") that an enlargement of time beyond 29 days would be granted (a "Satisfactory Departure"), Debtor has failed and refused to apply for such a Satisfactory Departure despite a specific request for Debtor to do so and to provide evidence of such application. As of the filing of this Motion, no evidence Debtor has applied for a Satisfactory Departure has been provided.

8. Due to Debtor's failure to apply for a Satisfactory Departure, the Crew understands CBP may well lay upon Crew the vessel's failure to leave port, with the result that CBP may cancel and revoke their C1/D seamen's visas. This would constitute a material harm to the Crew's ability to obtain anyemployment in the maritime industry for the next ten years, as a C1/D

visa is a prerequisite for any such job.

9. CBP appears poised to impose upon the Crew a very harsh sanction which could be easily remedied by the Debtor simply requesting an enlargement of time to remain in port.

10. Additionally, if CBP removes the Crew from the vessel (as Debtor alleges it does not have the financial ability to repatriate the Crew) that cost will ultimately become an unnecessary burden upon the Estate. If the entire Crew were repatriated by CBP, the fines alonw would well exceed $200,000, with an additional similar sum being an estimate of the cost of removing the Crew by CBP. There would be very little likelihood of these sums ever being recovered.

WHEREFORE, it is respectfully requested this Honorable Court direct Debtor to apply for a Satisfactory Departure from CBP forthwith.

## MOTION TO DETERMINE CONDITIONS FOR REMOVING ESTATE ASSETS FROM JURISDICTION

11. By taking the M/V "PALM BEACH PRINCESS" out to sea, regardless of destination, the Debtor's Estate would:

   a) place the vessel at danger of being arrested in a foreign jurisdiction, as happened in the case of the M/V "CASINO ROYALE."

   b) incur substantial adminstrative expenses with no prior Court approval and no Debtor in Possession financing in place. Several expenses are readily determined:

   i) On Monday, December 28, the ship took on a tanker of fuel without any prior authorization to do so. This represents $30,000;

   ii) Leaving port requires a two tug escort, estimated at $10,000;

   iii) Dockage in any foreign port is another significant expense, with tug services being required when foreign as the vessel's main engines are broken (She is operating with two auxiliary engines. Due to the configuration of the propellers and rudders, the vessel is very difficult to steer at low speed); and

   iv) there is a question as to whether there is adequate insurance to cover any losses, including personal injury, if the vessel is operated at sea.

12. Finally, if the M/V "PALM BEACH PRINCESS" leaves the jurisdiction and the Crew is

abandoned (especially if there is merit to the allegation that the true destination is the Dominican Republic) along with the ship, then not only will the Estate will lose a substantial asset (the vessel it enjoys today), the Crew will be unable to avail itself of this Court's protections.

13. The Crew faces a dilemna:

    a) On the one hand, if the Crew works without pay and without a written contract, they will aid and abet in removing a significant asset of this Estate from the Court's jurisdiction where it is subject to the real possibility of arrest or detention, someone must pay the dockage fees, regardless of whether that is to take the vessel to the Bahamas or to any other destination, i.e. the Dominican Republic. There is a risk, especially in light of prior conduct of actors involved herein, that they will be stranded abroad without their earned salaries, both pre and post-petition.

    b) On the other hand, if the Crew refuses to work without pay (and without clear guidance from the Court as to the terms and conditions for the removal of a significant asset from the Court's jurisdiction), the Debtor, through its inaction and CBP's actions, will impose upon the Crew a virtual economic death sentence, as CBP is charged with a duty to discharge U.S. law and its discretion to deviate from that duty to enforce the immigration laws may not be available to it, resulting in actions which would also eliminate, or at a minimum seriously endanger, any possibility the Debtor's Chapter 11 plan will be successful.

WHEREFORE, the Crew respectfully requests this Honorable Court direct the terms and conditions upon which the M/V "PALM BEACH PRINCESS" might be allowed to leave the jurisdiction and control of this Honorable Court, including the possibilty of imposing upon the operating officers of the Debtor a personal obligation to ensure the return of the vessel, along with its Crew, in the event the ship must leave the jurisdiction, along with such relief as deemed appropriate by this Honorable Court.

**MOTION FOR PAYMENT OF PRE-PETITION WAGES AND POST-PETITION WAGES**

14. Debtor's counsel advises the Crew is owed approximately $182,000 in pre-petition wages.
15. Additionally, it is requested all post petition wages be paid as due and owing on a bi-weekly basis, which Debtor's counsel evidenced initial agreement to.
16. This is without prejudice to those Crew who desire to cease their employment with Debtor and their right to receive, in addition to wages due for labor performed, to also receive serverance wages or any other maritime claims due to them by the Debtor's bankruptcy petition.
17. For those Crew desirous of continued employemnt, they are currently without valid contracts. Shipping on a vessel without signing valid articles of employment is a violation of the general maritime law. Before the vessel returns to operation, the Crew must be properly engaged.

WHEREFORE, the Crew respectfully requests this Honorable Court enter an order allow the payment of both pre and post petition wages as appropriate with the establishment of a bi-weekly payment thereafter and the preparation and execution of appropriate crew articles as soon as practicable, along with such other relief deemed appropriate by this Honorable Court.

## MOTION FOR ACCESS TO CREW

18. Access to the Crew has been closely controlled by the Debtor. This is, in part, understandable, as the Debtor must operate its business enterprise. However without access to legal counsel the Crew is unable to preserve its interest or marshal evidence to prove any claims which they may have.
19. Now that the ship is no longer actively trading CBP will not allow crew members to leave the vessel. Thus, counsel must board the ship. Undersigned counsel hold the requisite CBP/Department of Homeland Security creditials to enter the port unfettered, but the Debtor has evidenced a reluctance to allow attorney client meetings to proceed without a company representative attempting to listen in.
20. Undersigned counsel has represented hundreds of crewmembers in similar circumstances on two prior cruise to nowhere cases: 1) The *M/V "ISLAND ADVENTURE"* and 2) The *M/V "ST. TROPEZ"*, which involved approximately 200 crewmembers each, along with numerous smaller vessels. The time needed aboard ship is small and the intrusion minimal,

which is not a concern at this moment, as the Debtor is not operating the business at this time.

WHEREFORE, is it requested the Debtor provide free access to counsel, specifically Ross B. Toyne, Micheal Schimmel and Samantha Epstein, along with any court reporters, to meet with the Crew as needed, with additional access to the crew being afforded to any legitimate ministerial services, such as representatives of Seafarers' House or Stella Maris, and to representatives of the International Transportation Workers Federation, specifically Mr. Hans Saurenmann, along with such other relief as deemed appropriate.

--- the remainder of this page left blank intentionally ---

## EMERGENCY NATURE OF MATTERS

21. The *M/V "PALM BEACH PRINCESS"* Crew is justifiably concerned and asserts this situation is an emergency, as stated recently by The Honorable Paul C. Huck in the Miami Business Review, an emergency is where "someone will die or the ship will sail."

22. Despite a good faith effort to obtain financial assurances from the Debtor that Debtor would not abandon the Crew in the Bahamas, none were forthcoming. There is no Court order allowing for this vessel to leave the jurisdiction, nor imposing an obligation to do so upon any officer or director of the Debtor. If the Debtor has no money, then how is it financing the purchase of fuel, the payment of tugs or insurance coverage.

23. These are all matter which effect the viability of the Estate and the Debotr's long term recovery which should be addressed as quickly as possible.

24. Efforts have been made to resolve this matter amicably with Debotr's counsel. Due to perceived time constraints no agreement has been reached as of filing this Motion.

25. An emergency hearing is requested if the Court deems this appropriate.

## CERTIFICATE OF SERVICE

Undersigned counsel is not a Bankruptcy Court ECF filer, but will undertake forthwith to do so. Copies of this motion will be served on Debtor's Counsel via ECF upon filing and upon Mr. Randell Brungot, U.S. Customs and Border Protection, U.S. Department of Homeland Security, 1 East 11th Street, Room 323, Riviera Beach, FL 33404, via fax at 561-844-4639.

Dated this 29th day of December, 2009, at Miami, Miami-Dade County, Florida.

Toyne & Mayo, P.A.

By: Ross B. Toyne, FBN 57071
Michael Schimmel, FBN 57104
Samantha Epstein, FBN 68693
Chase Bank Building
150 SE 2nd Ave., Suite 1025
Miami, Florida 33131-1577
Tel: 305-377-1910  Fax: 305-377-1915
ross@passengerlaw.com

P:\Maritime - MV Palm Beach Princess\M Access to Crew.doc